JAMES LYCURGUS vs. DIRECTOR OF THE DIVISION OF
EMPLOYMENT SECURITY & another.[1]

Hampshire. December 9, 1983. — April 4, 1984.

Present: WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Employment Security,* Eligibility for benefits, Misconduct by employee.

Findings made by a review examiner in the Division of Employment Security
    supported his conclusion that the discharge of an employee when he
    returned from lunch two minutes late, having previously received a
    number of warnings concerning absenteeism and tardiness, was attribut-
    able solely to his deliberate misconduct in wilful disregard of the employ-
    er's interest. [626-627]
Evidence in a proceeding before the Division of Employment Security sup-
    ported the review examiner's findings that the employee's discharge
    when he returned from lunch two minutes late was attributable solely
    to his deliberate misconduct in wilful disregard of the employer's in-
    terests. [627-629]

CIVIL ACTION commenced in the Hampshire Division of the
District Court Department on September 14, 1981.

The case was heard by *Gibbons* J.

*Jim Hammerschmith* for the employee.

*George H. Mahanna,* Assistant Attorney General, for Direc-
tor of the division of Employment Security.

O'CONNOR, J. The plaintiff appeals from a judgment of a
District Court affirming a decision of the Division of Employ-
ment Security (division) denying the plaintiff unemployment
compensation benefits. We affirm.

A review examiner of the division concluded that the plain-
tiff's discharge from work was attributable solely to deliberate
misconduct in wilful disregard of the employer's interest within

---

[1] Phoenix Mutual Life Insurance Co. (employer).

the meaning of G. L. c. 151A, § 25 (e) (2).[2] The board of review of the division (board) denied the plaintiff's application for review. A judge of the District Court on appeal remanded the case to the board for further findings. The same review examiner conducted another hearing, made further findings, and again concluded that the plaintiff's discharge was attributable solely to deliberate misconduct in wilful disregard of the employer's interest. Again the board denied the plaintiff's application for review. On appeal another judge of the District Court affirmed the board's decision. The plaintiff appeals from the action taken by the District Court.

Because the board denied the plaintiff's application for review, the decision of the review examiner is to be treated as that of the board. G. L. c. 151A, § 41 (c). We summarize the findings of the review examiner. The plaintiff worked for the employer from February 9, 1981, to May 28, 1981. The employer's attendance rules were strictly enforced with respect to new employees. During his first month at the job, the plaintiff was absent four days and late one day. On March 13, he received and signed a written warning that if he were sick or absent in the next two months, it would mean automatic probation. He was again absent March 18, and was placed on three months' probation from March 20 to June 20. He signed a probation notice stating that the consequence of an absence or lateness during his probationary period would be automatic termination. In April, the plaintiff was absent four days because of court appearances. Those absences were excused.

On May 11 the plaintiff was five minutes late returning from lunch. On May 12 he was two minutes late for work in the morning. On May 18 he returned from lunch five minutes late. On May 19 he was two minutes late for work. He was

---

[2] General Laws c. 151A, § 25 (e) (2), as amended by St. 1982, c. 489, § 5, states that "no benefits shall be paid to an individual under this chapter . . . (e) [f]or the period of unemployment next ensuing and until the individual has had at least four weeks of work and in each of said weeks has earned an amount equivalent to or in excess of his weekly benefit amount after he has left his work . . . (2) by discharge shown to the satisfaction of the director [of the division] to be attributable solely to deliberate misconduct in wilful disregard of the employing unit's interest."

one minute late for work and five minutes late returning from lunch on May 20.

The plaintiff and his supervisor had several discussions about the plaintiff's tardiness. The supervisor suggested that the plaintiff try to start five minutes earlier in order to be on time. The plaintiff asserted that he was not required to be at work until 9 A.M. "on the dot" and there was nothing the supervisor could do about it.

On May 20 the plaintiff was given a written warning that he would be immediately terminated the next time he came to work late or returned late from lunch. The plaintiff admitted to the review examiner that he understood that warning.

The review examiner found that the plaintiff usually allowed himself one minute to return to the work site after lunch. His lunch period was forty-five minutes long. The plaintiff did not own a watch and he relied on the office clocks. On May 28, his last day of work, the plaintiff was lounging in the sun after lunch. He was watching a clock in that area. He estimated that he could reach his work site in five or ten seconds. According to the clock where he was lounging, the plaintiff started back to work a minute before he was required to be there. However, when he reached the work site he was two minutes late according to the clock there, and he was discharged.

The review examiner also found as follows: "From the testimony and written evidence presented at the hearing, it is found that the claimant was discharged for absenteeism and tardiness; that he had received a 60 day written warning, 90 days' probation, and a final written warning that he would be terminated immediately the next time he was tardy. It is further found that efforts by his supervisor to correct the claimant's attendance problems were met with a rebellious response by the claimant; that he deliberately remained away from work until the last minute, although fully aware that he was on the brink of termination.

"Since the claimant had been previously warned and was on notice of potential discharge, he knew he was in a precarious position and his actions were in wilful disregard of the employer's interests. Therefore, it is finally found that the claimant's discharge from work was attributable solely to deliberate mis-

conduct in wilful disregard of the employing unit's interests within the meaning of [G. L. c. 151A, § 25 (e) (2)]."

The plaintiff presents three arguments: (1) the "administrative record does not support the conclusion" that his discharge from employment was attributable "even in part" to deliberate misconduct in wilful disregard of his employer's interest, (2) a discharged employee is not disqualified from receiving unemployment benefits unless the discharge is attributable *solely* to deliberate misconduct in wilful disregard of the employer's interest, and the administrative record would not support that finding here, and (3) although the review examiner's decision states that he found that the plaintiff's "discharge from work was attributable solely to deliberate misconduct in wilful disregard of the employing unit's interests," the decision is fatally deficient because it fails to make findings which adequately support that conclusion.

We confront the plaintiff's third argument first. The plaintiff states that the review examiner found that the plaintiff "was discharged for absenteeism and tardiness." The plaintiff asserts that the evidence showed that many of the absences and incidents of tardiness were due to factors that were beyond his control, and therefore were not legitimate grounds for a denial of benefits. The significance of the finding that the plaintiff was discharged for absenteeism and tardiness is said to be that that finding negates the conclusion that the plaintiff was discharged solely for his conduct on May 28. The plaintiff argues that in the absence of a specific finding on the May 28 incident or of a finding that all the absences and incidents of tardiness were deliberate and in wilful disregard of the employer's interest, the review examiner's conclusion could have resulted in a denial of benefits because of conduct for which the law does not disqualify him. The argument is that without adequate subsidiary findings, the mere conclusion of the review examiner, adopting the statutory language, that the plaintiff's discharge "was attributable solely to deliberate misconduct in wilful disregard of the employing unit's interests," should not be enough to bar him from recovery.

Surely, a review examiner's decision is unacceptable if it does not contain sufficient subsidiary findings to demonstrate

that correct legal principles were applied. *Smith* v. *Director of the Div. of Employment Sec.,* 376 Mass. 563, 565-566 (1978). However, we are content that that requirement was met here and that the review examiner found that the plaintiff's discharge from work was attributable solely to his deliberate misconduct in wilful disregard of his employer's interests on May 28. While it is true that the review examiner found that the plaintiff was discharged for "absenteeism and tardiness," it is nevertheless apparent from the decision as a whole that the review examiner did not conclude that the plaintiff was discharged for "cumulative deficiencies," *Nantucket Cottage Hosp.* v. *Director of the Div. of Employment Sec.,* 388 Mass. 1006, 1007 (1983). The review examiner instead focused on the plaintiff's late return from lunch on May 28, and he found that the discharge was attributable to this conduct which was deliberate and in wilful disregard of the employer's interests. Only the incident of May 28 is treated in detail. The findings of numerous incidents of absenteeism and tardiness before May 28, as well as the findings with respect to discussions between the plaintiff and his supervisor and the warnings the plaintiff had been given, were included in the decision because of their relevancy to the important issue whether on May 28 the plaintiff knew of "the employer's expectation, the reasonableness of that expectation and the presence of any mitigating factors." *Torres* v. *Director of the Div. of Employment Sec.,* 387 Mass. 776, 780 (1982), quoting *Garfield* v. *Director of the Div. of Employment Sec.,* 377 Mass. 94, 97 (1979).

Our conclusion that the review examiner (and, therefore, the board) found that the plaintiff's discharge from work was attributable solely to his deliberate misconduct in wilful disregard of his employer's interests on May 28 brings us to the issue, raised by the plaintiff's second argument, whether the administrative record supports that finding. The test is whether the finding is supported by "substantial evidence." *Smith* v. *Director of the Div. of Employment Sec.,* 376 Mass. *supra* at 564. *Goodridge* v. *Director of the Div. of Employment Sec.,* 375 Mass. 434, 436 (1978). See G. L. c. 151A, § 42; G. L. c. 30A, § 14 (7) (*e*). Substantial evidence is "such evidence

as a reasonable mind might accept as adequate to support a conclusion," taking "into account whatever in the record detracts from its weight." *New Boston Garden Corp.* v. *Assessors of Boston,* 383 Mass. 456, 466 (1981), quoting *Boston Edison Co.* v. *Selectmen of Concord,* 355 Mass. 79, 92 (1968), and *Cohen* v. *Board of Registration in Pharmacy,* 350 Mass. 246, 253 (1966). See G. L. c. 30A, § 1 (6). We conclude that there was substantial evidence to support the review examiner's finding.[3]

The plaintiff argues that the undisputed evidence shows that there was a discrepancy among the employer's clocks. Taking that fact into account in measuring the reasonableness of the employer's expectations and the presence of mitigating factors, as should have been done, see *Garfield* v. *Director of the Div. of Employment Sec., supra* at 97, he states that a finding of deliberate misconduct in wilful disregard of the employer's interests on May 28 was not warranted. Furthermore, he contends, the evidence did not support a finding that his discharge from work was attributable solely to that conduct. We disagree with those contentions. The record shows that the plaintiff knew about the discrepancies among the clocks, that he deliberately risked tardiness, and that he had intentionally adopted a routine that inevitably would result in tardiness from time to time. He knew that this was contrary to the wishes of his employer. That the employer expected him to be on time was entirely reasonable. The plaintiff's misconduct was in no way mitigated by the discrepancies among clocks. The evidence before the review examiner did not require the conclusion that the plaintiff was "compelled to leave work through no 'fault' of [his] own." *Garfield* v. *Director of the Div. of Employment Sec., supra* at 96-97. The evidence fully supported the review examiner's contrary finding that the plaintiff's conduct on May 28 was deliberate misconduct in wilful disregard of his employer's interests.

The plaintiff's further argument that the evidence did not support the finding that the plaintiff's discharge from work was

[3] It follows, of course, that we reject the plaintiff's first argument, namely, that the evidence would not support a conclusion that the plaintiff's discharge from employment was attributable even in part to deliberate misconduct in wilful disregard of the employer's interest.

attributable solely to that misconduct is answered by *Moore* v. *Director of the Div. of Employment Sec.,* 390 Mass. 1004 (1983). Just as the claimant in that case was not discharged after her absences, the plaintiff's employment here was not terminated after his pre-May 28 absences and incidents of tardiness. Although he was not required to do so, the review examiner was justified in concluding that the plaintiff's discharge was attributable solely to his deliberate misconduct in wilful disregard of his employer's interest on May 28.

*Judgment affirmed.*